**AMERICAN FIDELITY & CASUALTY COMPANY et al., Appellants,**

v.

**Mrs. Claire DREXLER, Appellee.**

**No. 15292.**

United States Court of Appeals,
Fifth Circuit.

April 8, 1955.

**932**

Chas. L. Mayer, Shreveport, La., Sidney E. Cook, Jackson, Mayer & Kennedy, Shreveport, of counsel, for appellants.

Whitfield Jack, Shreveport, La., Harry H. Lipsig, New York City, Booth, Lockard, Jack & Pleasant, Shreveport, La., for appellee.

Before HOLMES and RIVES, Circuit Judges, and WRIGHT, District Judge.

**WRIGHT, District Judge.**

American Fidelity and Casualty Company, Texas and Pacific Motor Transport Company, and Harvey Steen Bell, appellants herein, seek reversal of a judgment against them based on the verdict of a jury in the amount of $42,353.44. The case arises out of a collision between a transport truck, owned by Texas and Pacific, driven by Bell and insured by American Fidelity, and an automobile driven by Louis A. Drexler, who was killed in the collision. Appellee here is Drexler's widow. In seeking reversal, appellants assert that the trial court erred in refusing to grant their motion for a directed verdict, in refusing to grant their motion for a new trial, in giving certain instructions to the jury and in refusing others, and in certain rulings on evidence. In addition, appellants assign as error the refusal of the trial court to allow them to cross-examine the appellant, Bell, after he had been placed on the stand by plaintiff at beginning of the trial under Rule 43(b), Federal Rules of Civil Procedure 28 U.S.C.A. For reasons hereinafter assigned, we find that the assignments of error are without merit sufficient to justify reversal.

The record shows that a transport truck, tractor-trailer type, forty-one feet in length, loaded with 15,000 pounds of freight, driven by appellant Bell, was proceeding east on Louisiana State Highway 20 followed at some distance by a Chrysler automobile driven in the same direction by the deceased, Drexler. There were no other occupants of either vehicle. When the truck arrived at an unmarked dirt road one and one-half miles north of Powhatan, Louisiana, it attempted to execute a left turn into that road. At that time, the Drexler car was in the act of passing the truck. The collision followed, with the car striking the rear end of the trailer, most of which was still on the right-hand side of the highway.

■■ Before outlining the evidence on which the jury could have predicated its verdict, it may be well to restate the principles which govern the consideration of a motion for a directed verdict filed by the defendant. In determining whether or not the evidence in a given case is sufficient to take the case to the jury over a motion for directed verdict, the evidence must be viewed in the light most favorable to the plaintiff, giving the plaintiff the benefit of every inference favorable to him which may be fairly drawn. It is not for the court to weigh the conflicting evidence or to judge the credibility of witnesses. Whenever the evidence is such that fair-minded men may draw different inferences therefrom, and reasonably disagree as to what

the verdict should be, the matter is one for the jury. "And the appellate court's function is exhausted when that evidentiary basis becomes apparent, it being immaterial that the court might draw a contrary inference or feel that another conclusion is more reasonable." Lavender v. Kurn, 327 U.S. 645, 653, 66 S.Ct. 740, 744, 90 L.Ed. 916.

■ Applying this test, we find from the record that the jury here could reasonably have drawn the following inferences from the evidence before it: that the driver of the transport truck first noticed the Drexler car when the truck was 450 feet from the dirt road; that at that time the Drexler car was 1,300 feet behind him; that Bell did not look back again to check on the plaintiff's car until the truck was 10 to 15 feet from the dirt road; that at that time he saw the plaintiff's car 150 to 180 feet behind him; that at that time the Drexler car, driving fast, was moving over to the left side of the road to pass the truck; that in spite of seeing the Drexler car in the position in which it was, Bell nevertheless attempted to execute the left turn; that, as a result, the 41 feet of the tractor-trailer was spread across both sides of the highway, making it impossible for the Drexler car to pass on either side; and that once the truck began to execute the left turn, Drexler could not have avoided the accident. Considering these inferences which the jury could fairly have drawn from the evidence, there can be no question but that this case is not one for a directed verdict for the defendant.

■ Under the Louisiana State Highway Regulatory Law, LSA–R.S. 32:235, 236, a driver attempting to make a left turn on a public highway must make certain that the turn can be made without danger to normal overtaking or on-coming traffic, and he must yield the right-of-way to such vehicles. Messina v. Audubon Ins. Co., La.App., 67 So.2d 143; Martin v. Globe Indemnity Co., La. App., 64 So.2d 257; Bergeron v. Department of Highways, La.App., 50 So.2d 337; Michelli v. Rheem Mfg. Co., La App., 34 So.2d 264; Lane v. Bourgeois, La.App., 28 So.2d 91; Lively v. State, La.App., 15 So.2d 617; Rogers v. F Strauss & Son, La.App., 194 So. 136 This is particularly true where, as here, the left turn is being made into an unmarked dirt road. Dudley v. Surles, La. App., 11 So.2d 70; Employers Fire Ins. Co. v. Langley, La.App., 197 So. 178. "When such a left-hand turn is being made and an accident occurs, the burden rests heavily on the driver who is making the left-hand turn to explain how the accident occurred and to show that he was free from negligence." Codifer v. Occhipinti, La.App., 57 So.2d 697, 699.

■ Here there was only one living witness to the accident, the driver of the truck. Under the law of Louisiana, it was incumbent on him, since he was making a left turn, not only to explain how the accident occurred, but to show that he was free from negligence. The evidence here shows, and the jury found, that Bell not only did not acquit himself of negligence, but his testimony, together with the physical facts in the case, clearly shows that he attempted to execute a left turn in utter disregard of the Drexler car which was then in the act of overtaking him. Instead of waiting for the Drexler car to pass, as he was bound to do under the law, Bell actually testified that he expected the Drexler car to stop in the highway while he made his left turn into the dirt road.[1] Not only does the evidence support the jury's conclusion as to the negligence of Bell, a reading of the Louisiana cases on left turn situations convinces this court that had the case been tried to the court rath-

---

1. Bell testified as follows:
    "Q. You figured he was going to stop and let you turn across? A. Yes, sir.
    "Q. Mr. Bell, you thought it was Mr. Drexler's duty to stop and let you make this left turn? A. Yes, sir.

    "Q. And you relied on him to come to a stop and let you turn across his front, did you not? A. Yes, sir."

er than to the jury, the result would have been the same.

■■ Appellants' alternative motion for a new trial involves a consideration of various rulings on evidence and instructions to the jury by the trial court. Appellants complain of the admission in evidence of retained copies of the joint income tax returns filed by the decedent and his wife. These tax returns were introduced in evidence in connection with Mrs. Drexler's testimony and she identified them, and her signature thereon, as genuine. The authenticity of the copies was supported by the credibility of the witness. The jury was at liberty to disbelieve Mrs. Drexler and disregard the evidence. Apparently it did not. Moreover, during the trial and pursuant to a stipulation of counsel, the court ordered the plaintiff to make available to the defendants all records of Mr. Drexler and his employers which would support the returns, none of which was used by appellants.

■■ Appellant Bell was placed on the stand by the plaintiff at the beginning of the case under Rule 43(b), Federal Rules of Civil Procedure, and was cross-examined fully on the circumstances surrounding the accident. At the conclusion of the cross-examination by plaintiff, the court indicated to the jury that Bell would be recalled to the stand by the other parties and examined by them during their part of the case. Whereupon counsel representing all defendants said, "I would like the record to show that I asked he be tendered to me for cross-examination." Appellants now urge error on the part of the court in refusing to allow the defendants to cross-examine Bell at the conclusion of the cross-examination by the plaintiff, insisting that Rule 43(b) gives them that right.

Appellants are correct. Rule 43(b) does give them that right.[2] But counsel for appellants should have called the court's attention to Rule 43(b) instead of merely preserving the point for appeal. Omniscient as a district judge is presumed to be, it is still the duty of counsel to state the ground of his objection and, in proper instances, the authority which supports his position. Rule 46, Fed.Rules of Civ.Proc. Otherwise the point may not be preserved for appeal. Employers' Mutual Casualty Co. v. Johnson, 5 Cir., 201 F.2d 153. In any event, the court's error in this regard has not prejudiced appellants. Subsequently, Bell was placed on the stand by appellants and examined fully.

■■ Appellants' primary assignment of error as to the court's instruction centers around the court's charge on the doctrine of last clear chance. As appellants contend, the court's charge on this doctrine is incomplete in that it does not refer, in so many words, to the element of discovered peril.[3] Counsel, however, in excepting to the court's charge in this connection, merely stated, "We

---

2. Rule 43(b) reads:
   "A party may interrogate any unwilling or hostile witness by leading questions. A party may call an adverse party or an officer, director, or managing agent of a public or private corporation or of a partnership or association which is an adverse party, and interrogate him by leading questions and contradict and impeach him in all respects as if he had been called by the adverse party, and the witness thus called may be contradicted and impeached by or on behalf of the adverse party also, and may be cross-examined by the adverse party only upon the subject matter of his examination in chief."

3. The court's charge on last clear chance reads:

"Here is a principle of law which you may apply in this case if you find the facts support it. It is what is known as the doctrine of last clear chance and it is simply this: if you find despite all other circumstances involved that Mr. Bell still had the opportunity by maintaining a proper look-out to do or not to do something which would have avoided the accident he would have had the last clear chance. On the other hand, if you find that notwithstanding all the other facts involved by maintaining a proper look-out Mr. Drexler still had the time to avoid the accident or the opportunity to avoid the accident or to do or not to do something that would have avoided it, then he would have had the last clear chance.

"Under Louisiana law even though the

further except to the Court's Charge as given on last clear chance. We feel the Court's Charge does not correctly state the law." Counsel failed to advise the court in what way the charge failed correctly to state the law and, consequently, his exception presents nothing for review. Rule 51, Fed.Rules of Civ.Proc.; Palmer v. Hoffman, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645; Allen v. Nelson Dodd Produce Co., 10 Cir., 207 F.2d 296; Metropolitan Life Ins. Co. v. Talbot, 5 Cir., 205 F.2d 529. Nevertheless, we have studied the court's charge on this doctrine. A reading thereof, considered in the background of this case, leaves us in no doubt that the jury was not misled thereby.

Appellants also argue that it was error on the part of the trial court to refuse certain of their requested charges. All of these requested charges were either covered in the general charge or are inapplicable. It is true that the court's charge on Louisiana Statutes Annotated–Revised Statute 32:-227 is not exactly in the language of the statute, and is, in fact, inaccurate in some degree, but not to the extent that it is prejudicial.[4] Rule 61, Fed.Rules of Civ.Proc.

Appellants' three remaining points may be quickly disposed of. The contention that there is no evidence to show that Drexler's death was caused by the accident is totally without merit. All of the medical evidence, including an autopsy report, is to this effect. Appellants' complaints about the argument of plaintiff's counsel are likewise unavailing. Counsel's argument was spirited and aggressive, but within the bounds of propriety. Finally, appellants insist that it was reversible error for the trial court to allow the dismissal of the intervention

filed by the compensation carrier of Drexler's employer and to instruct counsel during a trial not to refer to the fact that the plaintiff was receiving compensation. It is understandable why appellants would have the jury know of the compensation aspects of this case. Perhaps the jury might determine that since the widow was being otherwise taken care of, there should be no recovery against appellants in tort. But the plaintiff's claim for compensation is totally independent of her claim in damages for the death of her husband, and the fact that she had exercised her right to compensation should not be allowed to prejudice her claim in damages. Particularly is this true where, as here, her recovery in tort is subject to the claim of the compensation carrier.

Affirmed.

---

other party were guilty of negligence which continued to the moment of the accident, it is the one who failed to exercise the last clear chance to avoid it if such chance was available, who is responsible."

**4.** LSA–R.S. 32:227 reads:

"* * * Whoever operates a vehicle in violation of the speed limitations of this Chapter shall be prima facie at fault and

responsible for any accident proximately caused by such operation. * * *"

The trial court's charge reads:

"* * * The law also provides that where a motor vehicle operator who is exceeding the speed limit and is involved in an accident he, or those who claim through him, must show that his speed did not proximately cause the accident, or he will be considered prima facie at fault. * * *"